BRATFISCH *v.* TOWNSHIP OF MASON.

1. HIGHWAYS — BRIDGES — DEFECTS — ABSENCE OF RAILINGS — IN-STRUCTIONS.

The fact that, in an action against a township for injuries claimed to have resulted from the defective condition of a bridge, which was built over a creek at a height of 3½ feet, was from 12 to 14 feet in width, and constituted but 8 or 10 feet of a country highway, the court recognized, in one portion of his charge, the failure to provide railings for the bridge as a ground of negligence, is not reversible error, where it was followed immediately by instructions which limited the ground upon which plaintiff might recover to the existence of a certain hole in the bridge.

2. SAME — INSTRUCTIONS NOT BASED ON EVIDENCE.

An instruction, in an action against a township for injuries resulting from a defect in a bridge, of which it was claimed

the township had constructive notice, that plaintiff could not recover, if the defect had existed only two days, without showing that the township had notice and a reasonable time thereafter to make repairs, is not erroneous as permitting the jury to find actual notice, of which there was no evidence, where the context made it apparent that the court was simply stating a rule of law.

Error to Arenac; Sharpe, J. Submitted January 5, 1899. Decided June 5, 1899.

Case by Minnie Bratfisch against the township of Mason for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*M. D. Snow* (*Snow & Snow*, of counsel), for appellant.
*John F. O'Keefe*, for appellee.

MOORE, J. The plaintiff recovered a judgment against defendant for personal injuries received by her, occasioned by being precipitated from a highway bridge into the creek below. The assignments of error all relate to the charge of the court, or to his refusal to give certain requests proffered on the part of the defendant.

The record shows that the creek on which the bridge was constructed ran through what had been a cedar swamp. The bridge was planked with two thicknesses of plank. The lower plank were 14 feet long, and the upper, 12 feet long. The bridge constituted 8 or 10 feet of the highway. North of the bridge was a hill, the foot of which was about 10 rods away. South of the bridge was another hill. The bridge itself was about 3½ feet above the water. The roadway from the base of one hill to the other was originally constructed by placing logs across the roadway, and filling upon top of them with dirt. The roadway was elevated some feet above the swamp, and was 11 or 12 feet wide. There was no railing upon the bridge itself nor upon its approaches.

It is the claim of plaintiff that upon August 7, 1897, she

and her sister approached this bridge from the north, driving with a tight rein a gentle horse, hitched to a buggy or light wagon, the horse traveling upon a moderate trot; that, as the horse came upon the bridge, it took fright at a hole near the north side of the bridge, which was 6 to 10 inches wide and about 2 feet long, and suddenly shied, precipitating the vehicle and its occupants into the stream below, severely injuring the plaintiff. It is claimed that this hole in the bridge had been there since June, and was not far from the residence of the highway commissioner, who passed over the bridge frequently. It is claimed that because of the hole in the bridge, and the failure to erect a railing upon the bridge and embankment, the highway was not reasonably safe and fit for travel. It was the claim of defendant that the accident did not occur as the result of a defective bridge, but occurred because the horse got beyond the control of the driver when coming down the hill, and the wheels got out of the track, and ran off the roadway just as the conveyance got to the bridge. It is also claimed that, if there was a defect in the bridge, it had not existed long enough to create any liability. It is also claimed the horse was not safe to drive; that the hole was not the proximate cause of the accident, but that the horse probably got frightened at a bear or at children in the woods, or at a stump, and shied for that reason. Another defense interposed is that, as plaintiff passed over the bridge in the morning, and knew of its condition, she did not approach the bridge with that caution she ought. These various claims were submitted to the jury by the judge, and were passed upon by the jury. The only witnesses to the occurrence were the plaintiff and her sister.

The defendant asked the court to take the case from the jury "for the reason that plaintiff's own negligence contributed to her injury, in that she drove the horse down the hill upon the bridge on a trot, in a reckless manner, and before she reached the bottom of the hill the horse was beyond her control, and consequently the injury resulted." It is said in the brief that, as the horse pro-

ceeded down the hill, it increased its speed, and by the time it reached the bottom it was going at so rapid a pace that it became unmanageable and was beyond the control of the driver.   This request and the argument of counsel are not based upon the record.   It is true, some isolated portion of the testimony of the plaintiff, taken by itself, might be given such a construction; but the record discloses the plaintiff was a German, who understood and spoke English very imperfectly.   She desired to give her testimony through an interpreter.   It was thought best not to use an interpreter.   It is perfectly clear from her testimony that, when she spoke of the horse as beyond her control, it related to the time when it saw the hole and suddenly shied, and did not relate to what occurred before the horse reached the bridge; while the testimony of the sister was very clear that the horse approached the bridge slowly, and that it was not until it shied that it got beyond the control of the plaintiff.   In view of the testimony, it was very proper for the judge to refer the question of the negligence of the plaintiff to the jury, which he did in the following language:

"It was the duty of the plaintiff, as a matter of law, to provide herself with a reasonably safe conveyance when going upon the public highway, and that she should have a reasonably gentle and safe horse, and the duty was upon her to exercise reasonable care and prudence in driving along this highway and over this bridge; and, if she failed or neglected to observe any of these precautions, she is, in law, guilty of what is known as 'contributory negligence,' and she cannot recover in this case. 'Contributory negligence' means that by her own carelessness or negligence she has contributed to her own injury. And, if she has done that, under the law she is not entitled to recover at all, as you cannot apportion the negligence.

"Now, the mere fact that the plaintiff might have seen this hole in the board when she drove over it in the forenoon of that day would not, of itself, constitute her guilty of contributory negligence in endeavoring to pass over that bridge again that evening. You have a right to consider the fact, to say whether, under the evidence, a reasonably careful and prudent person would have endeavored to

cross that bridge, as she did, in the evening, knowing of the existence of the hole (if you find there was one, and she knew of its existence). And if you find that a reasonably careful and prudent person would not, having the knowledge she had, have offered to pass over that bridge, as she did on her return, then that would amount to contributory negligence on her part. Having a knowledge (if you find she had) of the fact that there was a hole in the bridge, then it became incumbent upon her to exercise more care and caution in crossing the bridge the second time than she would have otherwise been called upon to do. In other words, if she knew there was some danger in crossing the bridge,—if she realized that,—with the hole in it, then she would be expected to exercise care and caution proportionate to the risk she ran."

We do not think the defendant can complain of this charge. *Bouga* v. *Township of Weare,* 109 Mich. 520; *Whoram* v. *Township of Argentine,* 112 Mich. 20; *Schwingschlegl* v. *City of Monroe,* 113 Mich. 683, and cases cited there.

It is also claimed that the court erred in submitting to the jury the question whether the township was guilty of negligence in failing to provide railings to the bridge. It is said there was no dispute about the size of the bridge and the width of the stream, and the court ought to have said, as a matter of law, that the township was under no obligations to provide railings. That portion of the charge reads as follows:

"Now, the defendant in this case denies that the bridge was in the defective condition claimed by the plaintiff. It is admitted that there were no railings on the sides of this bridge. And I leave it to you, as a matter of fact, to say whether or not — when you consider the manner in which this bridge was constructed, its height above the water course, the condition of the road, and the entire surroundings — it was the duty of the defendant township to have constructed a railing along the sides of the bridge. That only becomes important for you to consider if you determine that the absence of the railing was in any manner the cause of the injuries which she sustained, and that these injuries were not caused by her own contributory negligence."

If what has just been quoted was all the judge said, it is possible it would have presented the case to the jury improperly; but he continued his charge by saying:

" The defendant claims that the accident was not caused by reason of her horse shying at a hole in the bridge, but that in some way she lost control of the horse on its way down the hill; and they claim that the horse or carriage had been—partly, at least—out of the regularly-traveled highway for some distance ·before it reached the bridge, and that the front wheel of the carriage struck the corner of the bridge, and tipped it and her over into the creek. Now, if you find that that is true,—if you find that the accident in this case was not caused in any way by the condition of the bridge, that the horse didn't become frightened at a hole in the bridge,—then the plaintiff in this case cannot recover. * * * Now, I will call your attention more particularly to some of the questions of fact which you must determine in this case. First, perhaps, would be, as suggested by counsel, Was the bridge reasonably safe and fit for public travel? If you find that it was, you should not discuss any other subject or question in this matter, because that would then put an end to plaintiff's case. If that bridge was reasonably safe and fit for public travel at the time she attempted to pass over it on her way going south that day, then the plaintiff cannot recover in this case."

The same statement was made to the jury in other portions of the charge. It is quite apparent that the jury must have understood that, before a verdict could be returned in favor of plaintiff, they must find the accident resulted from the defective bridge. The defendant denied that the bridge was defective. This raised a question for the jury, and not for the court. *Harris* v. *Township of Clinton*, 64 Mich. 447 (8 Am. St. Rep. 842); *Shaw* v. *Township of Saline*, 113 Mich. 342; *Perkins* v. *Township of Delaware*, Id. 377. If the jury believed the testimony offered on the part of the plaintiff, there was an abundance of testimony upon which to base the finding.

The court failed to give some of the defendant's requests to charge. This is said to be error. Some of the requests failed to contain all the essentials which made them proper

requests to be given, and for that reason were properly refused. Others of them were fully and completely covered by the general charge. The questions involved are not new, but have recently been passed upon by this court, so that a discussion of them would be unprofitable.

Judgment is affirmed.

MONTGOMERY, J., concurred with MOORE, J.

GRANT, C. J. I concur in sustaining the judgment in this cause. An examination of the record has convinced me that the case was fairly presented to the jury, and that there is no occasion for us to reverse the case for certain expressions used by the court in his instructions, which, standing alone, might be reversible error. While the court in one part of his charge recognized the failure to erect railings as a ground of negligence, he immediately followed the instruction by saying, "If you find that the horse did not become frightened at a hole in the bridge, the plaintiff cannot recover."

Counsel for defendant have argued very strenuously that the court permitted the jury to base their verdict upon a finding that the highway commissioner had actual knowledge of this defect, while in fact there was no evidence of any such knowledge. This claim is based upon the following instruction:

"Now, I say to you, as a matter of law, that if the hole was made there on Thursday, only two days before the accident occurred, that the plaintiff in this case could not recover without showing that the township, through its officials, had notice of the fact that there was a hole there in the bridge, and that, after receiving such notice, they had a reasonable time (the officers) to repair the defect, and did not do it."

The court was simply stating a rule of law, and it is evident from the connection that the jury must have so understood it; for the court immediately followed this instruction with one in regard to constructive notice, upon which alone the jury could have based their verdict.

I do not wish to be considered as assenting to a holding that it was negligence on the part of the township in this case not to erect railings across this bridge, which was composed of plank 14 feet long. If such liability exists in this case, it follows that there are many culverts and similar bridges in every township in this State for which a township would be liable should a traveler, under similar circumstances, drive off the end. This bridge was constructed in the usual way in which bridges of this character and culverts are constructed, and always have been. It is not, and never has been, customary to provide railings. The roadbed was in good condition and of sufficient width. I am not prepared to hold that the statute covers such cases.

HOOKER and LONG, JJ., concurred with GRANT, C. J.