## IRION v. CITY OF SAGINAW.

DEFECTIVE SIDEWALKS—PERSONAL INJURIES—CONTRIBUTORY NEG-
LIGENCE.

A pedestrian is shown to have been guilty of contributory
negligence, precluding her recovery for injuries sustained
from a defective cross-walk, where she testifies that she had
in mind the bad condition of the walk when she reached it,
that it was light enough for her to see it, and that she knew
if she passed over it she must exercise a great deal of care,
but took the chance of passing over it in safety; there being a
safe way at the side of the walk.

Error to Saginaw; Snow, J. Submitted January 27,
1899. Decided June 5, 1899.

Case by Mary Irion against the city of Saginaw for per-
sonal injuries. From a judgment for plaintiff, defendant
brings error. Reversed.

*E. L. Beach*, for appellant.

*Weadock & Purcell*, for appellee.

LONG, J. Plaintiff recovered in the court below, and
defendant brings error. The cross-walk upon which the
plaintiff was injured was one leading from the street curb
to the sidewalk, was slanting, and the boards were loose.
The stringers were rotten, and the boards lay upon the
ground. As she attempted to cross this walk, and when
she had put her right foot on one of the planks, it turned
under her, tipped up, and she was thrown backward. She
admits that when she arrived at this cross-walk it was
light enough for her to see it. She also admits that she
knew that this cross-walk was broken and in bad con-
dition, and that if she attempted to cross it she must
exercise great care. She was asked:

"*Q.* When you got up to this sidewalk, you knew it was not nailed, and was in bad condition?

"*A.* Yes.

"*Q.* You knew, if you went over that walk, you had got to exercise a great deal of care, didn't you?

"*A.* Yes, sir.

"*Q.* And when you got up there, you took the chances of going over there, and going over in safety?

"*A.* Yes, sir.

"*Q.* You knew that when you stepped on there?

"*A.* Yes, I saw the sidewalk was bad.

"*Q.* That is why you used extraordinary care in going over it?

"*A.* Yes, sir."

It appears also that by stepping one side a few feet she could have passed along without going over this walk.

Under these circumstances the court should have directed the verdict in favor of the defendant. The case is ruled by the following cases: In *Black* v. *City of Manistee*, 107 Mich. 60, the negligence complained of related to the construction of the walk, whereby it was claimed that the accumulation of ice and snow was increased, and made more dangerous than it would naturally have been upon a better located and constructed walk. The fall occurred in the daytime. Plaintiff admitted that she saw the ice before stepping upon the place where she fell; that she knew it was dangerous, but proceeded without taking hold of the hand-rail, because she had a book and a parcel in her hand, and was afraid she would slip under the hand-rail to the ground, a distance of three or four feet below. Like the present case, there was another and safe way. It was said: ·

"Where a person actually sees the danger before the accident, there is as great reason for him to avoid it as there is for the municipality to provide against it beforehand. She could as well judge of the safety of this icy walk from its appearance at the time as the authorities could anticipate the danger when the walk was constructed."

The court below directed the verdict in favor of defend-

ant on the ground of plaintiff's contributory negligence, and the judgment was affirmed here.

That case was cited and approved in *Grandorf* v. *Railway Co.,* 113 Mich. 496, in which Mr. Justice MONTGOMERY, writing the opinion, said:

"Plaintiff cites the case of *Laughlin* v. *Railway Co.,* . 62 Mich. 220, and other cases, in which it is held that knowledge of an obstruction or defective condition of a street does not make it negligence *per se* for the plaintiff to continue to attempt to pass over such defective way; but none of these cases go the length required here, where the nature of the obstruction, and the steps necessary to avoid it, are both apparent and in the mind of the plaintiff at the very moment of the accident. If this had been a defect of which the plaintiff simply had had previous knowledge, and which knowledge was not in her mind at the time, or if her attention had been diverted from the obstruction, there would be ground for the plaintiff to stand upon. * * * She knew precisely the risk she assumed, and assumed it. The case falls within *Black* v. *City of Manistee.*"

The present case cannot be distinguished from the above cases. Here the plaintiff, by her own admission, as above stated, had in mind the bad condition of the walk when she reached it that night. It was light enough for her to see it, and she says she knew if she went over it she must exercise a great deal of care, and took the chances of going over in safety. This certainly cannot be said to make a case for the jury to pass upon.

The following cases lay down no rule which, under the facts of this case, would justify the court in submitting this case to the jury: In *Lowell* v. *Township of Watertown,* 58 Mich. 568, it appeared that the accident happened on a dark night, while the plaintiff was walking along the highway. He was familiar with the locality, and knew of the defect, which consisted of a hole about a foot square, made for the purpose of allowing the water from the highway to pass into an underground drain. Plaintiff testified that he was thinking of this hole from the time he crossed the bridge until he stepped into

it. He was trying to avoid it when he stepped into it, and it was held that the question of his contributory negligence was for the jury. The case would have been quite analo-. gous to the present if the plaintiff there had seen the hole, and attempted to step over it, or to jump across it, and had fallen in. He would then have taken his chances.

In *Dundas* v. *City of Lansing*, 75 Mich. 509 (5 L. R. A. 143), the plaintiff testified that she was not thinking of the hole in the walk, nor looking for it, and that, if she. had been thinking about it, or looking for it, she would not have stepped into it. It was a dark, stormy night, with snow or mist falling, and she was hurrying along to get home. This cannot be likened to the present case, where the plaintiff, in approaching this broken walk, saw it, knew it was in bad condition, and says she took her chances in going over it.

In *Whoram* v. *Township of Argentine*, 112. Mich. 20, it appeared that the plaintiff knew there was a hole in the highway the fall before, but supposed it had been remedied, and that when he approached the place he was not thinking about the hole being there. It was held that the case was ruled by *Bouga* v. *Township of Weare*, 109 Mich. 520. In that case it appeared that, while the plaintiff's driver knew about the hole, he had forgotten about it when he approached it in the darkness of the night.

I have examined the original record in *Harris* v. *Township of Clinton*, 64 Mich. 447 (8 Am. St. Rep. 842), and it appeared that Sopher, who hired the horse of the plaintiff, drove over the highway about 1 o'clock in the daytime, and found the water covering the approach to the bridge some seven or eight inches deep. He crossed in safety. On his return, about 7 o'clock in the evening, it was still light. He drove across the bridge, and, when he arrived at the approach at that end, he found the water a little higher than when he crossed at 1 o'clock. The approach was a narrow embankment, and had two or three curves. In going over at this time he drove too

near the edge of the embankment, his horse slipped, fell in, and was drowned. He had no other way to recross the stream. He had recrossed the bridge, and arrived at the approach, when he found the water had risen since he passed before. He was familiar with the way, and had he kept upon the embankment, as he did in going over first, apparently he would have gone in safety. As said by the court. "The danger in this instance consisted in the liability of driving off the embankment because it was more or less obscured by the water flowing over it." The question of the negligence of Sopher was held to be for the determination of the jury, and, I think, very properly. If, as in this case, however, there had been a perfectly safe way by the side of that embankment, and he had taken the one which might prove dangerous, can there be any question that, as matter of law, Sopher would have been held guilty of negligence? If there had been another and a safe way, the case would have fallen within the rule in *Black* v. *City of Manistee, supra,* and the present case.

No case in this or in any other court, which I have been able to find, goes to the length of holding that a recovery may be had under the circumstances as stated in the present case.

The judgment must be reversed, and a new trial granted.

GRANT, C. J., HOOKER and MOORE, JJ., concurred. MONTGOMERY, J., did not sit.